**In the Matter of Archie Norman BREW-ER, and Irene Magdalene Brewer, d/b/a Maple Lane Farms, Debtors.**

**Archie Norman BREWER, and Irene Magdalene Brewer, Plaintiffs,**

v.

**TIP TOP CREDIT UNION, Defendant.**

**Bankruptcy No. 84–01752–SW–11.**

**Adv. No. 86–0193–SW–11.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

April 23, 1987.

Joel Pelofsky, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., former counsel for debtors/plaintiffs.

Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, Mo., successor counsel for debtors/plaintiffs.

Timothy R. Whelan, Bruce A. Copeland, Copeland, Scott & Whelan, Joplin, Mo., for defendant.

## ORDER DENYING PLAINTIFFS' "MOTION FOR RECONSIDERATION OF ORDER OF SEPTEMBER 15, 1986"

DENNIS J. STEWART, Chief Judge.

The matter at bar has a long and tortured history, which must be recounted at the outset. The following will serve as a brief description of the prior relevant history of this matter:

(1) In a former adversary action filed on June 17, 1985, the debtors sought recovery from the defendant Tip Top Credit Union on the grounds of allegedly unlawful prepetition transfers.

(2) The court, in that adversary action, issued its written order on August 1, 1985, setting a hearing of the merits of that action for September 6, 1985, in Joplin, Missouri.

(3) At the time thus set for trial, only the defendant Tip Top Credit Union appeared before the court, by counsel, Bruce A. Copeland, Esquire, who reported the terms of the settlement arrived at by the parties in the following colloquy with the court:

"Mr. Copeland: Judge, as I understand the settlement, it will involve Tip Top Credit Union returning to the debtors $5,000.00 in complaint of being wrongfully collected and entering into an arrangement whereby the debtors would share crops.

The Court: When will they return it?

Mr. Copeland: As soon as possible whenever the court feels would be reasonable.

The Court: Within seven days from today?

Mr. Copeland: That's fine.

The Court: O.K. Then go on.

Mr. Copeland: In addition, the agreement is that—I kind of have a problem here. I don't feel that this has to be a part of it. But in addition, the parties have agreed that the Brewers and Tip Top will sharecrop the acreage being 200 acres which was ordered in the courts order that stay was lifted on.

The Court: By whom?

Mr. Copeland: Mr. & Mrs. Brewer decided to farm the acreage and they would pay all expenses in putting in crops and fertilizer on the land. Tip Top would receive one third of the proceeds from any part of the crops. This arrangement would continue only as so long as Tip Top had not remarketed the land after foreclosure.

The Court: Well, then, its terminable at will. Is that it—by Tip Top?

Mr. Copeland: Terminable at will except for present year's crop planted in which Mr. and Mrs. Brewer are entitled to part of proceeds.

The Court: The crops that are in the ground now?

Mr. Copeland: Or any crops planted in the future that they might terminate while they've been planted.

The Court: So the crops that are in the ground now are subject to this agreement?

Mr. Copeland: There are no crops presently, Judge.

The Court: Well, then, what do you mean?

Mr. Copeland: He is planning on planting crops this fall.

The Court: Oh, the crops that will be planted. Anticipated crops, this year's crops. The anticipated this year's crops.

Mr. Copeland: In the event that they cannot remarket the—in a commercially reasonable fashion as indicated in the court's order they—

The Court: Well, then, if—but it's terminable at will, actually?

Mr. Copeland: It's terminable upon the resale of the land by Tip Top.

The Court: Well, you don't have any that—that doesn't say anything. I think what you mean is it is terminable at will because there aren't any requirements prerequisite to exercise of the right to resell it. That's what they intend to do but according to your agreement they don't have to. Isn't that right? You haven't agreed on a minimum price that Tip Top will have to sell it for?

Mr. Copeland: No, they don't.

The Court: Is that it then?

Mr. Copeland: No, on the other side of the agreement, the debtors are willing and feel it appropriate—all parties feel it appropriate—that the court's order of August 14, 1985, confirming the plan as of July 26, 1985, be amended to show each class of creditors—that the remaining balance after credit of the $78,503.65— that that amount will be amortized over 20 years at contract rate with payments of $1,212.18 per month.

(4) The court accordingly issued its order on September 18, 1985, approving the settlement and characterizing it as follows:

"On September 6, 1985, at the time fixed for hearing of the merits of this action in Joplin, Missouri, the defendant appeared by Bruce Copeland, Esquire, who related to the court that the parties had, in full compromise and settlement of this action, arrived at the following agreement:

(1) The defendant will, within 7 days of September 6, 1985, return the sum of $5,000, which defendant allegedly wrongfully collected, to plaintiff.

(2) The debtors and defendant will 'sharecrop' the 200 acres with respect to which the automatic stay was relieved in favor of Tip Top Credit Union in the confirmed plan of reorganiza-

tion. Under such 'sharecrop' arrangement, the debtors are to provide all expenses and labor necessary to plant, cultivate, and harvest crops and they will take ⅔ of the crop proceeds while Tip Top will be entitled to ⅓ of crop proceeds. The sharecrop arrangement will last through the harvesting and sale and division of this year's anticipated crops and thereafter will be terminable at the will of the Tip Top Credit Union.

(3) The court's prior order of August 14, 1985, confirming the debtors' proposed plan of reorganization will be deemed amended to show that the balance due to the class 7 creditor is $78,503.65 which will be amortized over 20 years at the rate of $1,212.18 per month.

(4) The within adversary action will be dismissed with prejudice and debtors will release Tip Top with respect to any and all claims or defenses based upon Tip Top's alleged lack of priority or lack of security in the milk assignment.

"Accordingly, it is hereby

"ORDERED that the above and foregoing provisions be, and they are hereby, approved and the parties are directed to perform them. It is further accordingly

"ADJUDGED that the within adversary action be, and it is hereby, dismissed with prejudice."

(5) On May 19, 1986, the debtors filed the adversary action at bar, complaining that their agreement with Tip Top Credit Union had not been correctly characterized by the court in its former judgment and accordingly requested relief which would restrain and enjoin the defendant from interfering with their use of the land.[1] It was further asserted, however, that the order of September 18, 1985, had been violated and relief was also sought on that basis.[2]

(6) A hearing was held on the complaint thus filed on July 11, 1986, in Joplin, Missouri. On the basis of the facts then shown by the evidence, the court issued its judgment on August 8, 1986, finding that the agreement for a tenancy at will had been violated by the defendant Tip Top Credit Union by evicting the debtors without sufficient advance notice before they could plant their 1986 crop; that the same violation had constituted a violation of the automatic stay, which the bankruptcy court could compensate under the provisions of § 362(h) of the Bankruptcy Code[3]; and that, according to the evidence, the damages caused by that violation were in the sum of $6,666.67, the same amount constituting the net proceeds which the debtors would have earned as the proceeds of their 1986 crop.

(7) On August 18, 1986, the defendant moved to alter or amend the judgment thus rendered. The defendant asserted multiple grounds, including a contention that it had demonstrated that timely written notice to vacate had been given the debtors[4] and a

1. In part, in the complaint in this action, the debtors alleged that this court's order of September 18, 1985, "does not conform to the agreed stipulation between the parties in that the agreement was for possession of the property by the plaintiffs for the 1986 calendar year unless the defendant sold the property in which case plaintiffs could harvest the crops growing at the time of the sale." They therefore requested, in part, that "the order of September 19, 1985, be corrected nunc pro tunc to give them possession through the calendar year 1986 ..." They also requested "an Order restraining and enjoining defendants from interfering with [plaintiffs'] use of the lands and from proceeding with the ejectment action until such time as the Order of September 18, 1985, by its terms, expires."

2. It was alleged in the complaint which inaugurated this action that "the defendant has violated the Order as written ..."

3. Which relevantly provides as follows: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

4. The defendant, in challenging the judgment for $6,666.67 initially rendered for plaintiffs by this court, offers to show that these written notices to vacate the premises were issued to the debtors, beginning in the Spring of 1986. But Mr. Brewer clearly and credibly testified in the trial of the merits of this action that he had

contention that the issue on which the court based its decision was one which was not joined by the pleadings.[5] The court issued its order on August 18, 1986, setting a hearing on the defendant's motion to alter or amend the judgment of August 8, 1986.[6]

(8) Later, the court received the *plaintiffs'* motion to alter or amend the judgment of August 8, 1986. Filed by a counsel who had not yet entered his appearance of record or sought appointment by the bankruptcy court as counsel for debtors, the motion requested that this court strike all findings to the effect that the debtors had agreed to a tenancy which was terminable at will and that the court "reinstate" the debtors on the subject land.[7]

(9) Because of the applicability of the Statute of Frauds, the court could not grant the relief now requested by counsel for the debtors in the form of an order reinstating the debtors on the land.[8] Further, if the court were to strike the findings—as debtors' new counsel plainly re-quested—of the existence of a tenancy at will, there could be no basis for the judgment which had been issued by the court on August 8, 1986. Therefore, on September 15, 1986, this court issued its order cancelling the hearing on defendant's motion to alter or amend the judgment of August 8, 1986, and vacating that judgment and instead entering judgment for the defendant on plaintiffs' complaint.

Plaintiffs' new counsel now, in a motion filed on September 24, 1986, moves for reconsideration of the order vacating the judgment for plaintiffs and instead entering judgment for defendant on plaintiffs' claim for relief.

The contentions of counsel for the plaintiffs which are now placed before the court—none of which is supported by any citation of authority—are so vague and confusing that it is difficult to believe that they have been advanced for the legitimate purpose of demonstrating that the court's prior judgment was in error. Rather, counsel seems simply attempting to obfuscate

---

received no such notice before he went out to plant the acreage and found that its custody had been given over to another person. The court was warranted in finding Mr. Brewer's testimony to be credible. Evidence that an ejectment suit was still pending in a state court was not sufficient to contradict Mr. Brewer's credible and uncontradicted testimony that he had already been prevented from planting his crop. This amounted to an effective and compensable eviction.

5. Defendant contended that "the only damage claim of [plaintiffs'] complaint sought damages for their inability to harvest 1985 crops. The Court's judgment was for $6,666.67 for debtors' alleged inability to plant 1986 crops. The Court acknowledged this difference, but based its judgment on Fed.R.Civ.P. 15(b), relating to issues tried by express or implied consent of the parties ... Defendant [, however] objected at the outset to the relevance of such testimony." The complaint of the plaintiffs, however, clearly sought damages for defendant's having "sought to divest Plaintiffs from possession by having a third party plow up part of the cropland." The court, in its challenged findings of fact and conclusions of law of August 8, 1986, (which were rendered in support of the judgment for $6,666.67) adverted to Rule 15(b), *supra,* only to support its awarding damages on the basis of the only agreement which could legally exist—

the oral agreement for a tenancy at will, which was seemingly necessarily brought into involvement by the above quoted allegation. Rule 15(b) is to be employed to promote justice, rather than frustrate it. Accordingly, it requires that posttrial amendments be "freely" granted when justice so "requires." "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

6. That hearing was set for September 18, 1986.

7. In the motion filed on August 18, 1986, on debtors' behalf by their new counsel, "debtors move the Court to alter or amend the judgment of August 8, 1986, by striking all findings that debtors agreed to a lease terminable at will and that the Court order the setting aside of the order of September 18, 1985, and reinstating debtors as lessees ..."

8. This has been pointed out at considerable length in the order of September 15, 1986, vacating the judgment of August 8, 1986, and instead entering judgment for defendant.

the fact that the clear applicability of the statute of frauds prohibits the granting of any relief in excess of the $6,666.67 judgment initially granted by the court.[9]

■■■ Even more fundamentally, an oblique but discernible effort is made to assert that the formal judicial admission of counsel for the plaintiffs which caused the initial judgment to be set aside should not be credited.[10] The court understands the reasons for the obliquity of these references, grounded as they are in counsel's need to neutralize the effect of his admission without explicitly saying so. Indeed, the court is in some considerable sympathy with counsel in this regard. Unfortunately, however, the law is plain and unassailable to the effect that counsel's admission is binding on his clients unless it is *clearly* and *unmistakably* shown that it would be in the interests of justice to hold otherwise.[11] Counsel's vague and ambiguous statements cannot constitute the clear and unequivocal showing required by the law.[12]

It is therefore, accordingly,

ORDERED that plaintiffs' motion for reconsideration of the order of September 15, 1986 be, and it is hereby, denied.

---

9. Indeed, as counsel for defendant have pointed out in their countersuggestions, there is no estate which can lawfully be plaintiffs' unless there was the oral tenancy at will which their counsel has now graciously disavowed. Current counsel for the debtors attempts gallantly to pin the blame for this admission on debtors' former counsel. Thus, current counsel contends that, in the hearing of July 11, 1986, the debtors, then under the tutelage of former counsel, stated that they did not agree to a tenancy terminable at will. Nevertheless, they were not then sufficiently foolhardy at that time to decline to accept the benefits of a tenancy terminable at will which the law, under the circumstances, implied in their favor. But, in requesting that the court strike all findings underlying the tenancy at will, current counsel did something which had not previously been done. He displayed the derring-do which had previously been lacking.

10. "[T]he court must look to the pleadings as part of the record in passing on the relevancy of evidence, and in ascertaining the issues ... They are used as judicial and not as evidential admissions, and for these purposes, until withdrawn or amended, are conclusive." *McCormick's, Handbook on Evidence,* § 265, p. 633, (1972).

11. "The burden on a party seeking relief from a stipulation freely entered into before or during trial is a heavy one. As a general rule, such

stipulations are controlling and conclusive, resolving all factual issues according to their contents and framing those issues remaining to be tried ... A formal admission by counsel in open court, made a part of the record and used as a foundation for judgment, is a most solemn and binding act ... Accordingly, evidentiary stipulations may not be tinkered with absent a clear and convincing demonstration that manifest injustice would otherwise result." *United States v. State of Texas,* 523 F.Supp. 703, 713 (E.D.Tex.1981).

12. Counsel makes some effort to contend that the damages are awarded for violation of the automatic stay rather than based upon any certain interest of the debtors in property. But the debtors must have *some* kind of interest in property before the automatic stay protects it. Current counsel for the debtors seems to contend that, if the court's holding is that there was no tenancy based upon an enforceable contract between the parties, the court should award damages for violation of the "sharecrop" agreement. This proposition ignores the fact clearly shown by the evidence, however, that the debtors were injured by being prevented from *planting* a crop, and in being deprived of possession of the premises for this purpose, and not for violation of any "sharecrop" arrangement.